486 So.2d 566 (1986)
STATE of Florida, Petitioner,
v.
Frederick P. CHAPIN, III, Respondent.
Frederick P. Chapin, III, Petitioner,
v.
State of Florida, Respondent.
Nos. 66150, 66272.
Supreme Court of Florida.
April 3, 1986.
Jim Smith, Atty. Gen. and Sean Daly, Asst. Atty. Gen., Daytona Beach, for petitioner/respondent.
*567 Chobee Ebbets of Smalbein, Eubank, Johnson, Rosier and Bussey, Daytona Beach, for respondent/petitioner.
SHAW, Justice.
We have jurisdiction to review Chapin v. State, 458 So.2d 339 (Fla. 5th DCA 1984), based on a certified question of great public importance.[1] Art. V, § 3(b)(4), Fla. Const.
Before answering the certified question brought to us by the state's petition, we address an issue raised by Chapin in his cross petition which we have consolidated. Petitioner Chapin pleaded nolo contendere to charges of third-degree felony murder[2] and trafficking in cannabis,[3] reserving the right to appeal the denial of his motion to suppress crucial evidence. He was convicted and sentenced concurrently to ten years imprisonment for each offense. On appeal, the district court found that the record supported the trial court's determination that the statements made by affiant police officers in securing a search warrant were made in good faith and not with reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We have carefully reviewed the record and, for the reasons which follow, agree with the district court that the record supports the trial court's determination.
Petitioner urges that the district court paid only lip service to Franks v. Delaware and was derelict in not reciting the facts in the record supporting the trial judge's ruling. Petitioner opines that facts were not recited because the author of the opinion could not intellectually support the affirmance. This criticism is unwarranted on two counts: 1) it is not necessary for appellate courts to regurgitate in every case the facts on which they and the trial court rely, and 2) the facts in the record at hand support the trial and district court.
The victim in this case was found dead from gunshot wounds in his back, outside petitioner's home in the early morning hours of 1 December 1980. Petitioner summoned the police and his lawyer and told the police that he had shot the victim in self-defense after being summoned to the front door by a request for help. Purportedly, petitioner armed himself before opening the door, where he was confronted by the victim attempting to draw a gun from his waistband. A handgun was found near the body. During the early morning hours of the investigation, the police received two anonymous phone calls reporting that illegal drug activities were involved in the incident. The police also noted that the victim had a lacerated wound on his left hand, that his watch had been torn from his wrist, that the gunshot wounds were to his back contrary to petitioner's story that he and the victim confronted each other, and that there were gouge marks on the wall inside, near the door, with a piece of metal embedded in the wall. The police seized a number of firearms and two hunting knives from the area to which they were admitted, but they were denied entry into two locked rooms. The police investigators suspected that something more than a thwarted burglary was involved and that a dispute had occurred inside the home before the shooting. They obtained a warrant to search for a knife with a broken tip. The affidavits in support relied on the wound to the left hand, possibly made by a knife, the gouge marks on the wall, the metal in the wall which was opined to be a *568 broken knife tip, and the inexplicable gunshot wounds to the back. The police were unable to identify the anonymous tipsters and did not use this information in their affidavit. The search warrant was executed and the police found a quantity of drug contraband in one of the locked rooms, including six bales of marijuana weighing approximately 180 pounds.
Petitioner does not challenge the adequacy of the information in the affidavits. Instead, he argues that the police knew or should have known that the information was false and that they acted in bad faith or reckless disregard of the truth. As support, he relies on what he perceives to be the facts presented to the trial judge. First, concerning the metal embedded in the wall; petitioner contends that the police should have immediately removed the metal from the wall, which would have shown that it was not a broken knife tip. Instead, the crime scene investigators removed the section of the wall containing the metal and sent it to the crime laboratory for later analysis. It is uncontroverted that when the metal was removed and examined, seven months later, the laboratory analyst concluded that it was not a broken knife tip and that it probably came from the rear sight of the handgun found near the victim's body.[4] Both affiants testified at the suppression hearing that they believed the metal might be a broken knife tip from a knife which caused the laceration to the victim's hand. They were subject to cross examination and, of course, their testimony was heard, and their demeanor observed, by the presiding judge. The laboratory analyst supported their veracity by testifying that the embedded metal could have been a knife tip and was not immediately removed because the investigation was in progress and no broken knife had been discovered for comparison. Petitioner appears to misapprehend the limited nature of the Franks inquiry into search warrant affidavits. It is not the truth of the information in the affidavit which is critical but rather the affiant's belief that it is true. The fact that the police acted negligently, made an innocent mistake, or might have conducted an investigation in a different manner, does not prove, or even establish a presumption of, bad faith or reckless disregard of the truth.[5]
Petitioner's second, and main, challenge to the good faith of the affiants is the purported fact that the lead investigator and affiant, Officer Bosco, attended the autopsy and consequently knew that the wound to the left hand was not caused by a knife. The medical examiner testified that he "believed" Bosco was present at the autopsy and that he could not recall telling Bosco that the wound was caused by a knife. From this ambiguous testimony, petitioner concludes that Bosco was present at the autopsy and knew to a certainty that no knife was involved. Petitioner's contention is not borne out by the record. The medical examiner also testified that the wound was a laceration and could have been caused by a knife. Further, both officer Bosco and his assistant (Buscher) testified that neither was at the autopsy and that both were at the crime scene and did not communicate with the medical examiner prior to their affidavits on which the search warrant was issued. Their testimony was corroborated by another officer who testified he attended the autopsy and that Bosco was not present. Bosco testified that his averment that the wound on the left hand appeared "to have been made by a sharp object possibly a knife" was *569 based on his own observations and experience. Again, petitioner misapprehends the Franks examination and buttresses his argument by a highly selective rendering of the record.
The question of great public importance which the district court certified to us has since been answered in the negative by State v. Snowden, 476 So.2d 191 (Fla. 1985); State v. Enmund, 476 So.2d 165 (Fla. 1985); and Vause v. State, 476 So.2d 141 (Fla. 1985).
We quash the portion of the district court decision to the contrary and remand for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and McDONALD and EHRLICH, JJ., concur.
OVERTON, and BARKETT, JJ., concur specially with an opinion.
ADKINS, J., dissents.
OVERTON, Justice, concurring specially.
I concur with the holding that statements made by police officers in securing the search warrant were made in good faith, and that State v. Enmund, 476 So.2d 165 (Fla. 1985), answers the certified question. I still adhere to my dissenting view in Enmund, but, because of this Court's decision in that case, I concur with the majority in this case.
BARKETT, Justice, concurring specially.
I concur with the majority that this case is controlled by the prior decisions of this Court in State v. Snowden, 476 So.2d 191 (Fla. 1985); State v. Enmund, 476 So.2d 165 (Fla. 1985); and Vause v. State, 476 So.2d 141 (Fla. 1985). However, I agree with Justice Overton's dissenting view in Enmund "that two separate sentences cannot be imposed for the identical conduct."
NOTES
[1] The certified question is:

DOES THE DOUBLE JEOPARDY CLAUSE OF THE STATE CONSTITUTION OR THE UNITED STATES CONSTITUTION BAR CONVICTION AND SENTENCING FOR BOTH THE UNDERLYING FELONY AND A FELONY MURDER CHARGE BASED ON THE SAME FELONY IN THE CONTEXT OF A SINGLE (RATHER THAN SUCCESSIVE) CRIMINAL PROCEEDING?
Id. at 341.
[2] § 782.04(4), Fla. Stat. (1983). The underlying felony was perpetrating or attempting to perpetrate the unlawful possession of a controlled substance, cannabis.
[3] § 893.135, Fla. Stat. (1983).
[4] If the metal came from the gun found near the victim's body, it indicates the gun had been inside the house and, presumably, so had the victim. This is consistent with the police theory that the altercation started inside the house and that respondent was concealing information on the cause of the shooting.
[5] We note that it is approved investigatory practice to remove potential evidence from a crime scene to a laboratory for later examination and that the police cannot reasonably be expected to suspend their investigatory activities until reports are received from the laboratory.